# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**Lone Star Logistics and Delivery, LLC**<br>84-2917608<br>5211 Spanish Oaks<br>Frisco, TX 75034<br><br>**Debtor** | **Case No.**   24-41357-R<br><br><br>**Chapter**   11 |

## OBJECTION TO DEBTOR'S EXPEDITED MOTION FOR ORDER AUTHORIZING THE INTERIM AND FINAL USE OF CASH COLLATERAL

Highland Hill Capital, LLC ("HHC"), by and through its undersigned counsel, for its Objection to Debtor's Expedited Motion for Order Authorizing the Interim and Final Use of Cash Collateral states as follows:

### INTRODUCTION

1. The Debtor sold accounts receivable to HHC pre-petition and, as such, has no legal or equitable interest in the accounts it sold to HHC, but the Debtor now seeks to use them as cash collateral. The Debtor cannot use the property it sold to HHC pre-petition as cash collateral. HHC objects to the Debtor's request to use cash collateral to the extent it intends to use the property HHC purchased pre-petition that is not property of the bankruptcy estate.

### BACKGROUND

2. On March 6, 2024, the Debtor entered into an Agreement with HHC ("First Agreement"). under which it sold, assigned and transferred to HHC $295,830.21 (the "Receivables Purchased Amount") of Receivables. A true and correct copy of the First Agreement is attached hereto. "Receivables" are defined in the Agreement as "all of [Debtor's] future accounts, contract

1

rights, and other obligations arising from or relating to the payment of monies from [Debtor's] customers and/or other third party payors [including] all payments made by cash, check credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of [Debtor's] business, for the payment of [Debtor's] sale of goods or services…"

3. All Receivables purchased by HHC were to be deposited into a bank account that was designated in the Agreement ("Account") by the Debtor and then HHC would debit $1,199.15 ("Initial Estimated Payment") of Receivables deposited into the Account daily.

4. The Initial Estimated Payment was meant to equal the Specified Percentage, defined in the Agreement as 10%, of daily Receipts collected. The Initial Estimated Payment was based on historical revenue information provided to HHC by the Debtor when the Agreement was entered into and the Agreement provides for a reconciliation to ensure the amount debited by HHC was equal to the Specified Percentage; therefore, the Agreement contemplates that the Initial Estimated Payment would be adjusted in accordance with the reconciliation provisions of the Agreement. There was no time period within which the Debtor had to remit the Receivables Purchased Amount to HHC and HHC assumed the risk that the Debtor's business may slow down and, as a result, the Receivables purchased by HHC would be remitted more slowly than anticipated or that the Debtor would cease operation in the ordinary course of business.

5. On March 27, 2024, the Debtor sold, assigned and transferred to HHC an additional $85,200 of Receivables to HHC under an Agreement ("Second Agreement"). A true and correct copy of the Second Agreement is attached hereto. The Second Agreement contained the same general terms as the First Agreement outlined above except that the Initial Estimated Payment, Receivables Purchased Amount and Specified Percentage were different.

6. The First Agreement and Second Agreement are collectively referred to herein as the Agreements.

7. The Receivables purchased by HHC under the Agreements are "accounts" and/or "proceeds of accounts" as those term is defined by the Unform Commercial Code. As the transactions between the Debtor and HHC were sales of accounts/sales of payment rights, HHC automatically obtained a security interest in the Receivables it purchased that arose when the transaction was entered into (no specific grant of a security interest was necessary) and was perfected on attachment. *See* UCC §§ 1-201(37), 9-109(a)(3), and 9-309. Nevertheless, HHC filed a UCC Financing Statement with the Texas Secretary of State on March 6, 2024 to put others on notice of the transactions. A copy of the UCC Financing Statement is attached hereto.

8. To date, HHC has not obtained $190,168.60 of the Receivables it purchased from the Debtor.

**OBJECTION**

9. HHC objects to the Motion because the Debtor is proposing to use the Receivables that were purchased by HHC under the Agreement. The Receipts purchased by HHC are not property of the bankruptcy estate. *See, e.g., In re R&J Pizza Corp.*, 2014 Bankr. LEXIS 5461 (Bankr. E.D. N.Y. Oct. 14, 2014). Per the terms of the Agreement, the Debtor has no legal or equitable interest in the Receivables it sold to HHC and Section 9-918 of the Uniform Commercial Code confirms that the Debtor has no legal or equitable interest in the Receivables.

10. Because the Receivables purchased by HHC are not property of the bankruptcy estate they do not constitute "cash collateral" that the Debtor may use pursuant to Section 363 of the Bankruptcy Code. Pursuant to Section 363(b)(1) of the Bankruptcy Code, a Debtor may only

be authorized to use property that is property of the estate. HHC does not consent to the use of its property by the Debtor.

11. In *In re R&J Pizza Corp.*, the United States Bankruptcy Court for the Eastern District of New York held that receipts purchased in a nearly identical transaction to the transactions that were entered into between the Debtor and HHC were not property of the bankruptcy estate. In *R&J Pizza* the court prohibited the debtor from using the receipts that were purchased and ordered the debtor to turnover the receipts in accordance with the terms of the agreement between the Debtor and the company that purchased the receipts. *See id*.

12. This Court should similarly prohibit the Debtor from using the Receipts purchased by HHC. If the Debtor wishes to use cash collateral, the Court should only permit the use of funds that do not constitute the Specified Percentage of Receivables.

13. The Debtor is instead obligated to turn over the purchased Receipts to HHC in accordance with the terms of the Agreement. *See In re Florian*, 233 B.R. 25, 27 (Bankr. D. Ct. 1999) (directing trustee to turn over insurance proceeds that did not constitute property of the debtor's estate); *Matter of Georgian Villa, Inc.*, 10 B.R. 79, 84-85 (Bankr. N.D. Ga. 1981) (holding that, where it appears that the debtor has no beneficial interest in the property, such property should be turned over to its true owner).

14. It is also worth noting that HHC's security interest in the Receivables it purchased is not even subject to Section 552 of the Bankruptcy Code because the security interest did not arise via a security agreement. Thus, so long as the Debtor continues to operate and generate Receivables the obligation to HHC is fully secured by the Receivables and its security interest in Receipts does not cut off as of the Petition Date.

15. As such, a replacement lien would be insufficient to protect HHC's interest in the Receivables it purchased from the Debtor. As the Receivables are HHC's property that the Debtor has no legal or equitable interest in, no form of adequate protection would be sufficient to protect its interests in the Receivables, nor would it be appropriate as the Receivables are not even property of the estate that the Court can authorize use of under any circumstances.

**WHEREFORE**, HHC respectfully requests that this Honorable Court deny the Motion or, in the alternative, if the Court wants to grant limited use of cash collateral, prohibit the Debtor's use of the Specified Percentage \ and grant such other and further relief as this Court deems just and proper.

Date: June 12, 2024

Respectfully Submitted,

KAMINSKI LAW, PLLC

*/s/ Shanna M. Kaminski*
SHANNA M. KAMINSKI
P.O. Box 247
Grass Lake, Michigan 49240
Tel: (248) 462-7111
Email: skaminski@kaminskilawpllc.com